**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in compliance with D.N.J. LBR 9004-1(b)

**McCARTER & ENGLISH, LLP**
Kate Roggio Buck
Adam M. Swanson (*Pro Hac Vice*)
Stephanie A. Pisko
Four Gateway Center, 100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Emails:  kbuck@mccarter.com;
         spisko@mccarter.com
         aswanson@mccarter.com

*Attorneys for S3 RE 1300 Manhattan*
*Funding LLC*

-and-

**SEYFARTH SHAT LLP**
James S. Yu
M. Ryan Pinkston (*Pro Hac Vice*)
620 8th Avenue
New York, NY 10018
Telephone: (212) 218-5524
Emails:   jyu@seyfarth.com
          rpinkston@seyfarth.com

*Attorneys for S3 RE Bergenline Funding, LLC and*
*S3 RE 1300 Manhattan Funding LLC*

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,<br><br>                   Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>Jointly Administered |
| AIRN LIQUIDATION TRUST,<br><br>                   Plaintiff,<br>v.<br>S3 RE BERGENLINE FUNDING LLC and S3 RE 1300 MANHATTAN FUNDING LLC,<br><br>                   Defendants. | Adv. Proc. No. 23-01169-JKS<br><br>Hearing Date: Nov. 14, 2023 at 10:00 a.m. ET |

**S3 RE BERGENLINE FUNDING, LLC'S AND S3 RE 1300 MANHATTAN FUNDING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.    THE COMMITTEE MISSTATES THE LEGAL STANDARD FOR DISMISSAL ........................... 2

II.    THE COMMITTEE'S ALLEGATIONS DO NOT PLAUSIBLY GIVE RISE TO ENTITLEMENT
      TO AVOID THE MORTGAGES AND ASSIGNMENTS OF RENTS. ............................................ 3

      A.    The Mortgage Avoidance Counts Should be Dismissed Because the Committee's Allegations
            are Not Sufficient to Defeat Presumptive Validity ...................................................... 4

      B.    The Factual Allegations Do Not State a Claim for Relief to Avoid the Bergenline Mortgage... 5

      C.    The Factual Allegations Fail to State a Claim to Avoid the Manhattan Mortgage ..................... 6

III.    THE COMMITTEE'S COMPLAINT FAILS TO PLEAD A BASIS UPON WHICH TO AVOID
        AND RECOVER POSTPETITION INTEREST PAYMENTS. .......................................................... 8

IV.    THE COMMITTEE CANNOT SAVE ITS CONSTRUCTIVE FRAUDULENT TRANSFER
       CLAIMS FROM THE LEGAL EFFECT OF SUBSTANTIVE CONSOLIDATION. ......................... 9

V.    THE COMMITTEE FAILS TO IDENTIFY ANY ALLEGATION IN THE COMPLAINT THAT
      TRANSFERS TO THE S3 LENDERS WERE MADE WITH ACTUAL FRAUD OR IN
      FURTHERANCE OF THE ALLEGED PONZI SCHEME. ............................................................. 11

VI.    THE COMMITTEE'S CHALLENGES TO DEFAULT INTEREST AND THE MINIMUM
       INTEREST SHORTFALL AMOUNT ALL FAIL. ........................................................................ 13

      A.    The Complaint Fails To Plead Facts Sufficient To State A Claim For Disallowance Of The
            Bergenline Loan's Default Interest. ............................................................................ 14

      B.    The Committee Likewise Fails To Plead A Claim For The Disallowance Of Default Interest
            Under The Manhattan Loan. ...................................................................................... 15

      C.    The Minimum Interest Shortfall Amount In The Manhattan Loan Is Not Subject To
            Disallowance As Unmatured Interest Or As A Penalty. ............................................. 15

      D.    Criminal Usury ......................................................................................................... 17

VII.    THE COMMITTEE'S PLEADING OF VALID CONTRACTUAL AGREEMENTS IS FATAL TO
        ITS UNJUST ENRICHMENT CLAIMS. ...................................................................................... 19

VIII.    THE COURT SHOULD REJECT THE COMMITTEE'S OBJECTION TO THE S3 LENDERS'
         PROOFS OF CLAIM, AND THE COMMITTEE'S ARGUMENT IS MOOT IN ANY EVENT. .... 19

IX. THE COMMITTEE'S PURPORTED DEFENSES OF SETOFF, RECOUPMENT, AND SECTION
502(d) FAIL ON ACCOUNT OF THE DEFECTIVE CLAIMS UPON WHICH SUCH DEFENSES
ARE PREMISED................................................................................................................................. 21

CONCLUSION......................................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 785 Partners LLC*,
  470 B.R. 126 (Bankr. S.D.N.Y. 2012) ........................................................................ 15, 17

*Am. Classic Voyages Co. v. Official Comm. (In re Am. Classic Voyages Co.)*,
  405 F.3d 127 (3d Cir. 2005) ............................................................................................ 20

*Assisted Living Assocs., LLC v. Moorestown Twp.*,
  31 F. Supp. 3d 389 (D.N.J. 1998) .................................................................................. 10

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*,
  362 B.R. 624 (S.D.N.Y. 2007) ........................................................................................ 12

*Dencer v. Erb*,
  142 N.J. Eq. 422 (Ch. 1948) ........................................................................................ 3, 4

*In re Doctors Hosp. of Hyde Park, Inc.*,
  508 B.R. 697 (Bankr. N.D. Ill. 2014) .............................................................................. 16

*Gil v. Clara Maass Med. Ctr.*,
  162 A.3d 1093 (N.J. App. Div. 2017) .............................................................................. 10

*Heidt v. BV001 Reo Blocker LLC (In re Heidt)*,
  626 B.R. 777 (Bankr. D.N.J. 2021) ................................................................................ 2, 6

*In re Buchholz*, 224 B.R. 13, 17, 22 (Bankr. D.N.J. 1998) ..................................................... 5

*LG Capital Funding, LLC v. Sanomedics Intern. Holdings, Inc.*,
  No. 508420/2014, 2015 N.Y. Misc. LEXIS 4294 (Kings County Sup. Ct. Nov. 23, 2015) ............... 18

*Metlife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*,
  159 N.J. 484 (1999) ...................................................................................................... 14

*In re NJ Affordable Homes Corp.*,
  No. 05-60442, 2013 Bankr. LEXIS 4798 (Bankr. D.N.J. Nov. 8, 2013) ............................. 12

*Panwest NCA2 Holdings LLC v. Rockland NCA2 Holdings, LLC*,
  205 A.D.3d 551 (1st Dep't 2022) .................................................................................... 19

*Pepper v. Litton*,
  308 U.S. 295 (1939) ...................................................................................................... 20

*Perkins v. Arif (In re Innovation Fuels, Inc.)*,
  No. 11-12911, 2013 Bankr. LEXIS 3041 (Bankr. D.N.J. July 22, 2013) ........................... 12

*In re Route One West Windsor Ltd. P'ship*,
  225 B.R. 76 (Bankr. D.N.J. 1998) .................................................................................. 14

ii

*Sale v. Ferrari Fin. Servs.*,
   No. 19-23563, 2020 U.S. Dist. LEXIS 176488 (S.D. Fla. Sept. 25, 2020) ......................................... 12

*Shasho v. Pruco Life Ins. Co. of N.J.*,
   67 A.D.3d 663 (2d Dep't 2009) ..................................................................................................... 18

*Star Funding, Inc. v. Vault Minerals, LLC*,
   No. 15 Civ. 3026, 2018 U.S. Dist. LEXIS 51930 (S.D.N.Y. Mar. 26, 2018) ................................. 17, 18

*Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*,
   716 F.2d 220 (3d Cir. 1983) .......................................................................................................... 19

*Ultra Petroleum Corp. v. Ad Hoc Comm. of OpCo Unsecured Creditors (In re Ultra Petroleum Corp.)*,
   51 F.4th 138 (5th Cir. 2022) ......................................................................................................... 16

*Walkowitz v. Walkowitz*,
   95 N.J. Eq. 249 (1923) ................................................................................................................... 4

*Wells Fargo Bank, N.A. v. Hertz Corp. (In re Hertz Corp.)*,
   No. 21-50995, 2022 Bankr. LEXIS 3358 (Bankr. D. Del. Nov. 21, 2022) ........................................ 16

*In re Zazzali v. 1031 Exch. Group LLP (In re DBSI, Inc.)*,
   476 B.R. 413 (Bankr. D. Del. 2012) ............................................................................................... 13

*Penn. ex rel. Zimmerman v. Pepsico, Inc.*,
   836 F.2d 173 (3d Cir. 1988) .......................................................................................................... 3, 8

**Statutes**

Bankruptcy Code Section 502(b)(2) ................................................................................................... 16

Bankruptcy Code Section 502(d) ....................................................................................................... 21

Bankruptcy Code Section 548(a)(1)(B) ............................................................................................... 9

N.J.S.A. 2A:82-17 ............................................................................................................................. 3

N.Y. General Obligations Law Section 5-501(6)(b) ....................................................................... 17, 18, 19

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ........................................................................................... 1, 6, 12

Federal Rule of Civil Procedure 11 ...................................................................................................... 6

The S3 Lenders[1] submit the following reply in support of their motion seeking dismissal of the Complaint filed by the Committee[2] or, in the alternative, a more definite statement.

## INTRODUCTION

In its opposition (Dkt. No. 29) ("Opposition" or "Opp."), the Committee deflects from the actual allegations set forth in the Committee's Complaint and asks the Court to accept on pure conjecture what the Committee suspects "likely" may have occurred.  Nowhere in the Complaint or the Opposition does the Committee dispute that the S3 Lenders provided many millions of dollars in loans to the Bergenline Debtor and the Manhattan Debtor, nor does the Committee set forth any allegations to establish that the S3 Lenders played any part or had any knowledge whatsoever in the alleged wrongdoing at NRIA.  Pleading what "might" have happened or what discovery "may" reveal is insufficient to state a claim upon which relief may be granted, especially where, as here, the central premise of the allegations is fraud or forgery that requires pleading with particularity in accordance with Federal Rule of Civil Procedure 9(b).

In an effort to circumvent this pleading requirement and the Complaint's failure to meet it, the Committee now insists that it is not alleging fraud or forgery.  That concession by the Committee means that its claims—premised upon avoidance of the S3 Lenders' Instruments on the ground that the notarizations of those documents are false—all fail.  Regardless how the Committee now characterizes its allegations, it is irrefutable that the Committee's contentions necessarily require the Committee to establish that the notarizations of Grabato's signatures on the Instruments are false statements.  If the notarizations are truthful and accurate (and the Committee alleges

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the S3 Lenders' Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint (Dkt. No. 20-1) ("S3 Memo.").

[2] The AIRN Liquidation Trust has substituted as plaintiff in place of the Committee, but for the sake of consistency with the Memo., the plaintiff is referred to herein as the Committee.

nothing more than rote speculation in an effort to suggest the contrary), then the Committee's position is plainly without merit.

What little that remains after rejection of the Committee's guess, as to what might have potentially happened with respect to execution of the Instruments, likewise fails. The Committee's assertion that the default interest to which the S3 Lenders are entitled constitutes unenforceable penalties and criminal usury has no support in well-settled law. The Committee fails to plead facts to establish that any of the payments to the S3 Lenders at issue were made with actual fraudulent intent or in furtherance of the alleged Ponzi scheme at NRIA, and the Committee cannot save its constructive fraudulent transfer claims by misconstruing the specific provision in the Plan that no limitation on substantive consolidation applies in this Adversary. Length is no substitute for substance, and a careful reading of the Committee's Complaint—the vast majority of which has nothing to do with the S3 Lenders—exposes that the Committee's allegations amount to nothing more than speculation and innuendo. Accordingly, the Complaint and each of the counts therein must be dismissed.

## ARGUMENT

## I.      THE COMMITTEE MISSTATES THE LEGAL STANDARD FOR DISMISSAL

A two-step analysis is required in deciding a motion to dismiss under Rule 12(b)(6), but the Committee entirely ignores the first step. First, the Court should disregard all conclusory allegations. *Heidt v. BV001 Reo Blocker LLC (In re Heidt)*, 626 B.R. 777, 788 (Bankr. D.N.J. 2021) ("First, a court should identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action."). After the conclusory allegations and formulaic recitations of the elements of the causes of action are identified and rejected, then the Court moves to the second analytical step. The second step evaluates whether, when taken as true, the "factual content of a complaint" beyond the rejected assertions, "plausibly gives rise to an entitlement to relief." *Id*. The

Complaint and its factual allegations stand or fall on their own, as the Committee is not entitled to supplement any defective allegations through argument or additional allegations set forth in an opposition to a motion to dismiss. *See, e.g.*, *Penn. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (cannot supplement or amend complaint through opposition brief) (quotation omitted).

## II.   THE COMMITTEE'S ALLEGATIONS DO NOT PLAUSIBLY GIVE RISE TO ENTITLEMENT TO AVOID THE MORTGAGES AND ASSIGNMENTS OF RENTS.

Although the Complaint seemingly asserts fraud as the basis of claims to void the mortgages (Counts I, VI.B, VII, VIII, XIII.B, and XIV, each and collectively the "Mortgage Avoidance Count(s)"), the Committee now argues in its Opposition that no such fraud was alleged.[3] The Committee relies upon this concession to assert that it need not allege with particularity why the Instruments are allegedly defective. However, an executed, notarized mortgage is presumptively valid absent clear and convincing evidence to the contrary.  N.J.S.A. 2A:82-17.  Evidence to the contrary would necessarily have to be fraud, forgery, duress, or mutual mistake.  *See Dencer v. Erb*, 142 N.J. Eq. 422, 426 (Ch. 1948) ("A certificate of acknowledgment made by a duly authorized officer is regarded as prima facie evidence that the person therein named executed the instrument to which it is attached as his voluntary act and deed").   The Complaint does not allege mutual mistake or duress (nor, as conceded, fraud or forgery). The Committee argues that there is no such requirement but does

---

[3] For example, despite pleading "actual fraud" to void the Mortgages, The Committee states that it is not attempting to void the Mortgages on the basis of fraud or forgery.  *See* Opp. p.7, n.6 ("Defendants attempt to characterize Counts I and VIII as based upon fraud or forgery, but those are not the bases alleged, and need not be proven, in order to avoid the mortgages and assignments of rent.".  Yet it directly contradicts itself with not only statements in the Complaint but in its Opposition. *See e.g.*, paragraph 13 of the Opposition stating "The Complaint is replete with detailed factual allegations concerning the Ponzi scheme and related bad acts committed by NRIA's and Debtors' Managers. . . . ***This is the underlying and pervasive fraud, pled in detail.***" (emphasis added).

not otherwise say what clear and convincing evidence it believes would plausibly defeat the prima facie validity of the Instruments.  The Committee has failed to adequately plead, plausibly or particularly, the who, what, when, where or what that could invalidate the presumptive validity. Simply, whether or not the Committee meant to allege fraud, the Complaint fails to articulate facts sufficient to constitute a cause of action.

### A.    The Mortgage Avoidance Counts Should be Dismissed Because the Committee's Allegations are Not Sufficient to Defeat Presumptive Validity

As noted, the Committee insists that the Mortgage Avoidance Counts are <u>not</u> premised upon fraud or forgery.  Opposition (at ¶¶ 31 33). In light of that concession, the Committee's attempt to avoid the Instruments necessarily fails given the "strong presumption" under New Jersey law that a notarized signature is precisely what it purports to be.  *Dencer v. Erb*, 142 N.J. Eq. 422, 426 (Ch. 1948) (citing *Potter v. Steer*, 95 N.J. Eq. 102, 104 (Ch. 1923)); *see also Walkowitz v. Walkowitz*, 95 N.J. Eq. 249, 250 (1923) (collecting cases).   The Committee admits the "uncontroversial legal standard" that "[a] notary's acknowledgment is *prima facie* evidence of the due execution of an instrument."  (Opp., at ¶ 31 (quoting S3 Memo., at 9-10).)  Given the Committee's admission that it is not alleging fraud or forgery in connection with Pinkus' notarization of the Instruments (the "Notarization(s)") or contending that either Notarization is false, the Committee's effort to avoid the Instruments on the basis that, "upon information and belief," Grabato did not acknowledge or execute the Instruments, cannot survive.  The Notarizations expressly state that Grabato, a person known to the notary, appeared before her and executed and acknowledged that he executed each of the Instruments.  (*See* Complaint, at Exs. G, L, M, O.)  Given that the Committee's allegations are <u>not</u> that the Notarizations are fraudulent or forged, then the Committee has certainly failed to plead any facts to rebut the strong presumption of the Notarizations' accuracy and validity. Accordingly, the Committee has failed to plead any basis at all upon which to avoid the Instruments.

4

With the legitimacy of the Notarizations unchallenged, the remainder of the Mortgage Avoidance Count allegations, many of which are stated "upon information and belief," have no relevance at all.  It is not clear (as it is not stated) whether the Committee is alleging that the Notarizations resulted from a mistake or some other *non*-fraudulent set of circumstances. Regardless, the Committee's contention that NRIA and its managers previously engaged in fraud does not plausibly support any conclusions about the Notarizations (which were attested to by an independent Notary).  Likewise, a bare allegation of an incorrect date on a signature page is inconsequential, even if true.  The Committee simply cannot establish that the Instruments are defective without pleading how and why.

While the Committee focuses on a mere conclusory allegation that signature pages were separately affixed to the Instruments (again, without any how or why), it fails to provide any legal authority to support the invalidation of secured instruments on this basis. (see Opp., at ¶ 32). Without any facts plausibly undermining the presumptively valid Notarizations, the Committee's position is not supported by *In re Buchholz*, wherein the court considered a signature page that was executed in one room outside the presence of the notary and then carried into another room to be notarized by an individual who never actually witnessed the execution.  224 B.R. 13, 17, 22 (Bankr. D.N.J. 1998) (Buchholz signed a document in presence of Brown, but Hagan, who was not present, later notarized signature). There are no such allegations here. In other words, the Committee concedes the authenticity of the Notarizations and fails to allege why the Court should override them.

**B.**      **The Factual Allegations Fail to State A Claim to Avoid the Bergenline Mortgage**

Specific to the Bergenline Mortgage, the Committee asserts that "Grabato never actually signed or acknowledged the version of the Bergenline Mortgage that was ultimately filed." (Opp., at ¶ 36.)  That conclusion, however, is unsupported by facts alleged in the Complaint and is directly at odds with the Notarizations that the Committee now admits it does not challenge as fraudulent.  Under

the Committee's non-fraud theory, the allegation must be that signature pages were mistakenly affixed to the Instruments without Grabato's knowledge or consent.  Not only is this implausible given the Committee's express allegations that the parties then carried out the very same loan transactions over several years, but also the Committee never alleges any facts regarding this theory. Federal Rule of Civil Procedure 9(b) and Federal Rule of Civil Procedure 11 require much more.

### C.    The Factual Allegations Fail to State a Claim to Avoid the Manhattan Mortgage

Pursuant to the requisite two-step analysis recognized in *Heidt*, the Court must disregard the conclusory statements in the Complaint before evaluating whether the remaining factual allegations, if true, "plausibly give rise to an entitlement to relief". *Id.*, 626 B.R. 777, 788 (Bankr. D.N.J. 2021).

Instead of identifying the factual allegations that, taken as true, would comprise claims for relief, the Committee instead focuses on descriptions of Debtor's unrelated alleged financial wrongdoing as if this somehow establishes a claim to void the Manhattan Mortgage, which was duly executed, recorded, and is facially valid.  It is not just that the factual allegations, if true, fail to state a claim, but, with respect to the Manhattan Mortgage, no relevant factual allegations underpin the Mortgage Avoidance Counts.

Specifically, when evaluating the few factual allegations in the Complaint that are not conclusory, it is evident that even if true they do not state causes of action to avoid the Manhattan Mortgage.  The Committee states that the signature pages of the Manhattan Mortgage are dated November 5, 2019 but that the document is dated November 15, 2019 and therefore that somehow indicated fraud.  *See* Complaint at 143-146.  This allegation does not constitute a cause of action for fraud or otherwise (even if by saying "fraud" the Committee actually meant "mistake.").  Moreover, the Committee ignores that the Manhattan Mortgage actually states it is "***dated as of***" November 15, 2019.  That means the effective date of the document is November 15, 2019. This is irrelevant as it is entirely possible, and indeed common, that an instrument may be executed prior to it taking effect.

6

Without some factual allegation whatsoever to explain the reason, a bare allegation of differing dates does not support avoidance of the Manhattan Mortgage.

Beyond this, the allegations to void the Manhattan Mortgage are based solely on conclusory statements and speculation that because the Debtor is a bad actor then there must have been some sort of possible, theoretical, unspecified wrongdoing in connection with the execution of the Manhattan Mortgage.

The Committee has no such evidence and, instead, merely asserts its belief "that additional discovery will establish that, like the Bergenline Mortgage, the Manhattan Mortgage and Manhattan Assignment of Rents were not properly acknowledged or recorded." (Complaint, at ¶ 146) In other words, Plaintiff argues that because it concludes (without sufficient support) that the Bergenline Mortgage was not properly acknowledged or recorded, it also concludes (without *any* support) that the Manhattan Mortgage was not properly acknowledged or recorded. Specifically, Plaintiff marches through conclusory statements in paragraphs 1 through 6 of the Complaint to claim that the Bergenline Mortgage is invalid then simply states that the Manhattan Mortgage "also suffers from defects that render it likewise invalid and avoidable."  No factual allegations are made with respect to the Manhattan Mortgage to show that it is defective in any way.  Moreover, the Manhattan Mortgage was executed over one year after the Bergenline Mortgage.  There is no connection between the execution of the Mortgages for two different properties and two different borrower entities. Nonetheless, even imparting the Bergenline-related allegations would be insufficient, as those allegations are conclusory. Pure conclusions like those set forth in the Complaint must be disregarded under the correct application of the Rule 12(b)(6) standard.

### III.   THE COMMITTEE'S COMPLAINT FAILS TO PLEAD A BASIS UPON WHICH TO AVOID AND RECOVER POSTPETITION INTEREST PAYMENTS.

The Committee's Counts IV, VI.D., XI., and XIII.F seek to avoid and recover various postpetition payments of interest to the S3 Lenders, but those counts are conditioned upon the Committee's failed attempt to state a claim for avoidance of the Instruments. Because the Committee has not sufficiently alleged a basis to avoid the Instruments, the Committee's effort to avoid the postpetition interest payments based upon such Instruments also fails.

The Committee points out that this Court's Consent Order included a reservation of the Committee's ability to challenge the extent, validity, and/or priority of the S3 Lenders' secured interests, (*see* Opp., at ¶¶ 43, 45, 47), but the S3 Lenders do not contend that the Committee lacks the ability to attempt to assert such a challenge. Rather, the S3 Lenders' point is that a reservation of rights (whatever they may be) is not a substitute for well-pled allegations that set forth a legitimate basis upon which to avoid the postpetition interest payments, the latter of which the Committee fails to state in the Complaint. As explained in the S3 Memo. (at 15-16), a debtor-in-possession is permitted to make postpetition interest payments in the ordinary course of business. The Committee argues in its Opposition that the payments at issue here were not made in the ordinary course, but the Committee is not entitled to supplement its deficient allegations in the Complaint through an opposition to a motion to dismiss. *See, e.g.*, *Zimmerman*, 836 F.2d at 181.

The same holds true for the Committee's argument that S3 Manhattan is "undersecured" in light of the value of the Manhattan Property. (Opp., at ¶ 52.) What little detail the Committee now offers in its Opposition is nowhere to be found in the Complaint, and the Committee's boilerplate allegation mentioning the word "undersecured" is a bald legal conclusion unsupported by any

factual allegations.  Accordingly, the Complaint fails to allege a basis upon which to avoid the

postpetition interest payments duly made to the S3 Lenders.[4]

## IV.  THE COMMITTEE CANNOT SAVE ITS CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS FROM THE LEGAL EFFECT OF SUBSTANTIVE CONSOLIDATION.

In Counts III and X of the Complaint, the Committee seeks to avoid and recover certain

transfers pursuant to Bankruptcy Code Section 548(a)(1)(B) and its New Jersey statutory analog on

the theory that non-borrower Debtors paid obligations owed by the Bergenline Debtor and the

Manhattan Debtor.  Whatever merit such a theory may have once had disappeared, in accordance

with well-settled law, upon the substantive consolidation of all the Debtors.  (*See* S3 Memo., at

17-19.)  The Committee does not contest the foregoing legal principle—that substantive

consolidation eliminates constructive fraudulent transfer claims premised on one debtor's payment

of another debtor's obligation—but instead erroneously contends (i) that the Plan limited such effect

of substantive consolidation here, and (ii) that substantive consolidation after the existence of a

constructive fraudulent transfer claim is of no effect.  (*See* Opp., at 23-27.)  Neither contention has

merit.

Leading up to the confirmation hearing, the S3 Lenders lodged objections to the Plan,

including on the ground that substantive consolidation was improper, especially with respect to the

Bergenline Debtor and the Manhattan Debtor.  (*See* S3 Lenders' Joint Objection to Plan (Dkt.

No. 3017), at ¶¶ 9-16.)  As the Committee points out, negotiations ensued, (*see* Opp., at 23), but the

Committee misreads the following provision inserted into the Plan in exchange for the S3 Lenders'

withdrawal of their objections to substantive consolidation:

---

[4] The Committee is correct that the S3 Memo. mistakenly stated that the Bergenline Loan matured prepetition.  (*See* Opp., at ¶ 44.)  The error was unintentional, contrary to the Committee's attempt to establish deceitful intent on the part of the S3 Lenders, and in any event, the maturity date of the Bergenline Loan has no relevance to the issues presently in dispute.

> [N]othing in this Plan, ***including without limitation, any limitation on the effect of substantive consolidation as set forth in Article IV, Section H infra***, is intended to or shall impair the rights . . . or defenses of . . . S3 RE Bergenline Funding LLC and/or S3 RE 1300 Manhattan Funding LLC in the S3 Adversary.

(Plan, at 21-22 (Art. III.B.3 (emphasis added).)  This language specifies that the purported limitation on the effect of substantive consolidation set forth in Article IV, Section H of the Plan has no effect as it pertains to this Adversary (even if such effect may be limited in other matters).  In other words, substantive consolidation has the exact same legal effect in this Adversary as it would in any other case in which no limitation exists.  The Committee improperly asks the Court to ignore this specific nullification of Article IV, Section H as though it does not exist.[5]

In light of the express nullification of Article IV, Section H here, the Committee's arguments and authorities in which courts have imposed such limitations are inapposite.  (*See* Opp., at ¶¶ 55.)  The S3 Lenders do not dispute that courts have limited the effect of substantive consolidation in other cases, but the Committee cites no authority for the proposition that this Court should completely disregard a specifically negotiated, express provision setting forth that no such limitation will be applied in this action.  And, the Committee's remark that a confirmed plan is to be treated as a contract, (*see id.* at ¶ 57), drives home the S3 Lenders' point because, when interpreting contracts, more specific provisions—such as the express nullification of "any limitation on the effect of substantive consolidation" in the Plan here—govern over more general ones.  *See, e.g.*, *Gil v. Clara Maass Med. Ctr.*, 162 A.3d 1093, 1098-99 (N.J. App. Div. 2017) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general"); *Assisted Living Assocs., LLC v.*

---

[5] The precise effect of substantive consolidation asserted here (*i.e.*, the elimination of the Committee's constructive fraudulent transfer claims) was expressly negotiated in revising the Plan and resolving the S3 Lenders' objections to confirmation.  Documentation is available upon request.

*Moorestown Twp.*, 31 F. Supp. 3d 389, 399 (D.N.J. 1998) (well-settled principle in New Jersey law

that specific clauses control general clauses) (collecting cases).

The Committee's second contention, that the filing of this Adversary prior to confirmation

of the Plan neuters the legal effect of substantive consolidation, is unsupported by citation to any

authority and also ignores the fundamental basis of substantive consolidation in the first instance.

As the Committee and Debtors *successfully* argued in support of confirmation, (*see* Plan

Proponents' Memorandum of Law in Support of Plan Confirmation (Dkt. No. 3259), at ¶¶ 103,

107), during the prepetition period, the Debtors disregarded corporate separateness and commingled

funds across all entities to such an extent that they should be treated as though they were a single

entity at all times.  Stated differently, the Committee is incorrect in its suggestion that the legal

fiction of substantive consolidation springs into existence only as of the date of plan confirmation

and has no retroactive effect.  By definition, substantive consolidation in bankruptcy necessarily

occurs *after* the prepetition transfer(s) sought to be avoided, which means that the Committee's

flawed approach is at odds with the many decisions that hold substantive consolidation eliminates

prior-in-time constructive fraudulent transfer claims.  (*See* S3 Memo., at 17-18.)

The Committee elected to pursue and successfully achieved substantive consolidation of the

Debtors' estates, and it expressly agreed in Article III, Section B.3 of the Plan that any purported

limitation on the effect of substantive consolidation would have no application in this Adversary.

Accordingly, Counts III and X of the Complaint fail as a matter of law and must be dismissed.

**V.    THE COMMITTEE FAILS TO IDENTIFY ANY ALLEGATION IN THE
       COMPLAINT THAT TRANSFERS TO THE S3 LENDERS WERE MADE WITH
       ACTUAL FRAUD OR IN FURTHERANCE OF THE ALLEGED PONZI SCHEME.**

With respect to Counts II and IX of the Complaint, the Committee argues in its Opposition,

just as alleged in the Complaint, that a fraud was generally perpetrated by individuals at NRIA.

(*See* Opp., at ¶¶ 60-61; Complaint, at ¶¶ 170-71.)  The Committee also concedes, as it must, that "it

is the fraud of NRIA—the Ponzi scheme—that forms the basis for those claims." (Opp., at ¶ 60.)

However, the Committee cannot overcome the indisputable fact that the Complaint is devoid of any

allegation that establishes that any prepetition transfers received by either of the S3 Lenders "were

in furtherance of the Ponzi scheme." (S3 Memo., at 19-20 (collecting cases).) This defect is fatal to

the Committee's actual fraudulent transfer claims, especially given that such claims must be pled

with particularity in accordance with Rule 9(b). *See, e.g.*, *In re NJ Affordable Homes Corp.*,

No. 05-60442, 2013 Bankr. LEXIS 4798, at *47 (Bankr. D.N.J. Nov. 8, 2013) (Section

548(a)(1)(A) claim must be plead with particularity under Rule 9(b)) (collecting cases); *Perkins v.*

*Arif (In re Innovation Fuels, Inc.)*, No. 11-12911, 2013 Bankr. LEXIS 3041, at *42-43 (Bankr.

D.N.J. July 22, 2013) (allegation of some fraud insufficient when not linked to specific transfer);

(*see also* S3 Memo., at 6).

    The Committee has no legitimate retort to the foregoing, so the Opposition instead reiterates

the Committee's belief that fraud occurred at NRIA generally. (*See* Opp., at ¶¶ 60-61, 66-69.)[6]

Whether fraud or a Ponzi scheme occurred at NRIA is beside the point. The Committee's

obligation, to state a claim that survives dismissal, is to plead *facts*, not conclusory statements, that

establish that each specific transfer at issue was made in order to perpetuate or in furtherance of the

Ponzi scheme. *See Sale v. Ferrari Fin. Servs.*, No. 19-23563, 2020 U.S. Dist. LEXIS 176488, at

*15-16 (S.D. Fla. Sept. 25, 2020); *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re*

*Bayou Group, LLC)*, 362 B.R. 624, 637-38 (S.D.N.Y. 2007) (court must focus precisely on specific

---

[6] The New Jersey Bureau of Securities Cease and Desist Order upon which the Committee relies, (*see* Opp., at ¶ 61), expressly provides that "." The Committee's reliance on its *argument* from a reply brief in a discovery dispute from the main bankruptcy case likewise has no bearing on whether the Complaint filed in this Adversary pleads with particularity factual allegations that establish that each specific transfer to the S3 Lenders was part and parcel of the alleged Ponzi scheme.

transfer).  The fact that a Ponzi scheme occurred says nothing about whether one transfer or another was part of the scheme.

The Committee's discussion of *In re Zazzali v. 1031 Exch. Group LLP (In re DBSI, Inc.)*, 476 B.R. 413, 422 (Bankr. D. Del. 2012), further supports the S3 Lenders' position.  (*See* Opp., at ¶ 70.)  In *DBSI*, the court denied a motion to dismiss where the trustee alleged that "money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme."  476 B.R. at 422.  The allegations in that case—that newly invested funds were paid to earlier investors to attract new investors—bear no resemblance to the Committee's allegation that while a Ponzi scheme was occurring at NRIA with respect to real estate investors, debt service payments were paid to the *non-investor* S3 Lenders.  It simply is not the case that every payment made by a debtor while a Ponzi scheme is occurring constitutes an actual fraudulent transfer, and unless and until the Committee pleads *with particularity* factual allegations that establish that the payments to the S3 Lenders were in furtherance of the Ponzi scheme, the Committee is not entitled to the Ponzi scheme presumption.  Because the Complaint has no other factual allegations (as opposed to boilerplate conclusions) that the payments to the S3 Lenders were made with actual fraudulent intent, Counts II and IX necessarily fail and must be dismissed.

## VI.   THE COMMITTEE'S CHALLENGES TO DEFAULT INTEREST AND THE MINIMUM INTEREST SHORTFALL AMOUNT ALL FAIL.

As explained in the S3 Memo. (at 20), in Counts VI.C., XIII.C, XIII.D. and XIII.E., the Committee seeks to invalidate the *presumptively reasonable* contractual default interest rates under the Bergenline Loan and the Manhattan Loan as "unenforceable penalties" and contends that the minimum yield interest on the Manhattan Loan constitutes unmatured interest, unliquidated

damages, and violates New York's criminal usury statute. The Committee's arguments in its

Opposition do not save these counts from dismissal.

### A.      The Complaint Fails To Plead Facts Sufficient To State A Claim For Disallowance Of The Bergenline Loan's Default Interest.

With respect to the Bergenline Loan, the Committee merely recites the minimum non-

default interest rate (9.25%), the non-default interest rate at the time the Complaint was filed

(12.375%), and the default interest rate (24%) and contends that these rates, in and of themselves,

establish that the default rate is an unenforceable penalty. (*See* Opp., at ¶ 79.) The Complaint

contains no other factual allegations regarding the default interest rate. (*See* Complaint, at

¶¶ 219-222.) And, the Committee deliberately ignores in its Opposition that the Bergenline Loan

provides for a "Default Rate" of "interest equal *to the lesser of* twenty four percent (24.0%) per

annum or the maximum legal rate at the time any such interest is to be calculated." (Complaint, at

¶ 85, Ex. I (at ¶ 1(d)) (emphasis added).)

In any event, this default interest rate is "presumed reasonable," which means that the

Committee bears the burden to plead facts that would establish its unreasonableness. *Metlife Cap.*

*Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159 N.J. 484, 501 (1999); *see also In re Route One West*

*Windsor Ltd. P'ship*, 225 B.R. 76, 86-87 (Bankr. D.N.J. 1998) (effect of presumption in favor of

contract is "to impose upon the debtor the burden of proving that the equities favor allowing interest

at a different rate"). In response, the Committee argues persuasively that New Jersey courts

consider the totality of the circumstances when assessing whether a default rate constitutes a

penalty. (*See* Opp., at ¶ 77.) The Committee is also correct that the courts consider, among other

things, whether the default rate is a reasonable estimate of the potential costs of administering a

defaulted loan and the potential difference between the contract rate and what a lender might pay to

secure a commercial loan to replace the funds. (*See id.* at ¶ 78); *see also Metlife*, 159 N.J. at 495

(listing other factors, such as difficulty in assessing damages and bargaining power of parties).  All

of this is precisely the S3 Lenders' point, as the Complaint does not contain any factual allegations

regarding these various considerations.  As the S3 Lenders previously stated, and to which the

Committee fails to respond, "[n]owhere in the Complaint are any factual allegations regarding

whether the default rate is a reasonable forecast of just compensation for the harm occasioned by

the Bergenline Debtor's breach or whether such harm is incapable or difficult to accurately

estimate." (S3 Memo., at 21.)  Absent the pleading of actual facts, the Committee fails to state a

claim for the disallowance of default interest under the Bergenline Loan.

**B.      The Committee Likewise Fails To Plead A Claim For The Disallowance Of Default Interest Under The Manhattan Loan.**

The Committee's allegations that the default rate in the Manhattan Loan is an unenforceable

penalty are virtually identical to its allegations regarding the Bergenline Loan.  (*See* Complaint, at

¶¶ 297-300 (merely reciting minimum non-default, current non-default, and default interest rates).)

Under New York law, the Court must uphold the default rate provision if, at the date of execution of

the agreement, "the amount liquidated bears a reasonable proportion to the probable loss and the

amount of the actual loss is incapable or difficult of precise estimation."  *In re 785 Partners LLC*,

470 B.R. 126, 136 (Bankr. S.D.N.Y. 2012) (quotation omitted).  The Committee, in its Opposition,

simply proclaims that the default rate of interest under the Manhattan Loan "is plainly

disproportionate to the probable loss and actual loss," (Opp., at ¶ 85), but conspicuously omits any

citation to a factual allegation in the Complaint.  This concession is dispositive, and dismissal of the

Committee's challenge to default interest under the Manhattan Loan is appropriate.

**C.      The Minimum Interest Shortfall Amount In The Manhattan Loan Is Not Subject To Disallowance As Unmatured Interest Or As A Penalty.**

The Committee's challenge to the Minimum Interest Shortfall Amount set forth in the

Manhattan Loan likewise fails.  As a preliminary matter, the Committee's continued assertion that

15

the Manhattan Debtor only received four draws under the Manhattan Loan, (*see* Opp., at ¶ 88), is false and deliberately misleading.  It is beyond dispute that the Manhattan Debtor received twelve separate draws under the Manhattan Loan.  (*See* Complaint, at ¶ 305.)  It is primarily upon this mischaracterization of indisputable facts that the Committee argues that the Minimum Interest Shortfall Amount is disproportionate and unenforceable.  (*See* Opp., at ¶¶ 88-89.)

Furthermore, the Complaint alleges expressly the Manhattan Debtor's prepetition default under the Manhattan Loan Agreement and S3 Manhattan's prepetition notice of loan maturity and demand of payment of all amounts due, (*see* Complaint, at ¶¶ 98 (Ex. K.), 313), which necessarily means that the Minimum Interest Shortfall Amount matured prepetition.  As a result, the Committee now pivots to an argument that the Minimum Interest Shortfall Amount is the "economic equivalent of unmatured interest."  (Opp., at ¶¶ 91, 97.)  This argument ignores the undisputed fact that the amount at issue matured prior to the bankruptcy filing, and the decisions upon which the Committee relies do not stand for the proposition that an already matured sum can be reclassified as the economic equivalent of unmatured interest for purposes of Bankruptcy Code Section 502(b)(2).  *See In re Doctors Hosp. of Hyde Park, Inc.*, 508 B.R. 697, 705 (Bankr. N.D. Ill. 2014) ("The Yield Maintenance Premium here was unmatured at the time of the bankruptcy filing because the event that triggered the Yield Maintenance Premium, an acceleration of the loan, did not occur until after the bankruptcy filing."); *Wells Fargo Bank, N.A. v. Hertz Corp. (In re Hertz Corp.)*, No. 21-50995, 2022 Bankr. LEXIS 3358, at *792 (Bankr. D. Del. Nov. 21, 2022) (noting redemption premium at issue "was 'unmatured' as of the petition date"); *Ultra Petroleum Corp. v. Ad Hoc Comm. of OpCo Unsecured Creditors (In re Ultra Petroleum Corp.)*, 51 F.4th 138, 147 (5th Cir. 2022) (make-whole amount triggered by bankruptcy filing and, thus, unmatured as of time of filing bankruptcy petition).  The Court should reject the Committee's proposition that a "matured" amount may be

treated as "unmatured" or that an amount post-maturity could still constitute the "economic

equivalent of unmatured interest."

Setting aside the undisputed fact of "maturity" and the Committee's unsupported contention

that the Court may sweep that fact aside, the Committee does not disagree with the S3 Lenders that

"[a] 'substantial majority of courts' have held that [make whole payments] are claims for liquidated

damages, not for unmatured interest."  (S3 Memo., at 24 (quoting *In re School Specialty, Inc.*,

No. 13-10125, 2013 Bankr. LEXIS 1897, at *17-19 (Bankr. D. Del. Apr. 22, 2013)).  Instead, the

Committee posits that the Minimum Interest Shortfall Amount is an unenforceable penalty rather

than a valid liquidated damages provision.  (*See* Opp., at ¶¶ 98-100.)  This argument also fails,

including because the Complaint does not set forth any factual allegations that state a claim with

respect to the Minimum Interest Shortfall Amount constituting a penalty.  In particular, the

Committee's allegation, reiterated in its Opposition (at ¶ 100), is that the after-the-fact, "effective

average balance of the loan" renders the minimum yield a penalty, but whether a provision

constitutes a penalty "is to be determined as of its date, not as of its breach."  *785 Partners*, 470

B.R. at 135.  The Committee's hindsight (based on a mischaracterization of the actual facts, in any

event) has no relevance.  Accordingly, the Committee's objections to the Minimum Interest

Shortfall Amount should be rejected.

### D.    The Committee's Criminal Usury Count Is Frivolous.

The Committee similarly argues that the Manhattan Loan is criminally usurious based on an

after-the-fact analysis (and a mischaracterization) of facts regarding the Manhattan Loan's unpaid

principal balance.  (*See* Opp., at ¶¶ 101, 103.)  N.Y. General Obligations Law Section 5-501(6)(b)

requires an examination of the amount "the lender or lenders *have agreed to advance or make*

*pursuant to such agreement*," (emphasis added), not on the amounts ultimately advanced or made.

*See also Star Funding, Inc. v. Vault Minerals, LLC*, No. 15 Civ. 3026, 2018 U.S. Dist. LEXIS

51930, at *9 (S.D.N.Y. Mar. 26, 2018) ("[C]ourts consider the amount agreed upon between

corporations, not the actual loan amount, in determining the applicability of criminal usury laws.");

*Shasho v. Pruco Life Ins. Co. of N.J.*, 67 A.D.3d 663, 665 (2d Dep't 2009) (exempting loan from

usury law "as the face of the note provides that the amount owed was $3,500,000").  Here, because

the Manhattan Loan has a face amount of $44 million, (*see* Complaint, at ¶ 96), the loan is exempt

from New York's criminal usury law, which does not apply to "any loan or forbearance in the

amount of two million five hundred thousand dollars or more."  N.Y. General Obligations Law

Section 5-501(6)(b).

The Committee tries, unsuccessfully, to distinguish the decision in *Star Funding* because it

was interpreting a supply agreement, (*see* Opp., at ¶ 106), but neglects to mention that the court in

*Star Funding* seized upon the exact same language from Section 5-501(6)(b) regarding the amount

lenders "have agreed to advance" as requiring that usury be examined at the inception of the

transaction based on the face of the loan documents.  *See* 2018 U.S. Dist. LEXIS 51930, at *9.

Similarly, the Committee asks the Court to ignore decisions from New York state courts

interpreting New York law, (*see* Opp., at ¶¶ 105-106), but provides no contrary authority of its own

(because no contrary authority exists).  Instead, the Committee concedes that, on the face of the

Manhattan Loan Agreement, it "[m]athematically . . . would not be usurious" in at least one

particular, after-the-fact circumstance.  (Opp., at ¶ 107.)  This possibility defeats the Committee's

position.  *See, e.g., LG Capital Funding, LLC v. Sanomedics Intern. Holdings, Inc.*,

No. 508420/2014, 2015 N.Y. Misc. LEXIS 4294, at *30 (Kings County Sup. Ct. Nov. 23, 2015)

(loan "not usurious merely because there is a possibility that the lender will receive more than the

legal rate of interest") (quotation omitted).

Based on the foregoing, this Court should follow the express statutory language in Section 5-501(6)(b), as well as the persuasive New York state court decisions cited by the S3 Lenders, (*see* S3 Memo., at 26), and reject the Committee's contrived usury argument.

## VII. THE COMMITTEE'S PLEADING OF VALID CONTRACTUAL AGREEMENTS IS FATAL TO ITS UNJUST ENRICHMENT CLAIMS.

In Counts V and XII of the Complaint, the Committee asserts an entitlement to recover postpetition interest payments made to the S3 Lenders on an unjust enrichment theory. As the S3 Lenders pointed out, however, (*see* S3 Memo., at 27), the Committee's unjust enrichment claims are expressly premised upon the validity of the Instruments underlying the S3 Lenders' claims against the estate. (*See* Complaint, at ¶¶ 79, 96.) The Committee's retort that its unjust enrichment counts turn on "whether there is some basis to conclude that the Defendants were not entitled to receive post-petition interest" misses the point. (Opp., at ¶ 110.) The Committee alleges in such counts that the Instruments are valid, which constitutes a concession (for the purposes of the unjust enrichment counts) that the S3 Lenders were contractually entitled to receive the postpetition interest payments. Accordingly, the unjust enrichment claims fail as a matter of law. *See Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 227 (3d Cir. 1983) (New Jersey law); *Panwest NCA2 Holdings LLC v. Rockland NCA2 Holdings, LLC*, 205 A.D.3d 551, 552 (1st Dep't 2022) (New York law).

## VIII. THE COURT SHOULD REJECT THE COMMITTEE'S OBJECTION TO THE S3 LENDERS' PROOFS OF CLAIM, AND THE COMMITTEE'S ARGUMENT IS MOOT IN ANY EVENT.

The Committee next asks the Court to reach the remarkable and nonsensical conclusion that the S3 Lenders' electronic submission of their proofs of claim through the Court-approved claims agent's online portal renders the S3 Lenders' proofs invalid. As a threshold matter, the S3 Lenders do not argue that the Committee has failed to plead sufficiently its draconian and hyper-technical

position.  Rather, the S3 Lenders' point is that the Court should reject the Committee's position as a matter of law, especially given the Committee's full awareness at all times of the S3 Lenders' claims and the absence of any prejudice to the Committee or anyone else.

Turning to the substance of the Committee's position, the Committee does not dispute that the S3 Lenders' claims were scheduled by the Debtors as liquidated, non-contingent, and undisputed, that the Committee has known all along that the S3 Lenders' asserted secured claims against the Bergenline Debtor and the Manhattan Debtor, that the S3 Lenders' proofs of claim— filed to assert the S3 Lenders' entitlement to accruing interest, late fees, attorneys' fees, and other amounts as provided in the underlying loan documents—were timely filed, or that the S3 Lenders were authorized to submit such proofs of claim through Omni Agent's electronic interface.  Nor does the Committee contend that the proofs of claim do not bear the mark of the S3 Lenders' counsel, as counsel quite obviously filled out the proofs of claim forms as an officer of the Court and included the requisite information in substantial compliance with Official Form 10.

Importantly, the Committee does not allege any prejudice resulting from the manner in which the S3 Lenders filed their proofs of claim.  No such prejudice could be shown here, especially in light of the Court-approved (and Committee-negotiated) stipulation between the Debtors and the S3 Lenders setting forth all the particulars of the S3 Lenders' claims.  (*See* Complaint, at ¶ 22.)  As a result, this Court should be "guided by principles of equity and . . . act to assure that 'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295, 305 (1939).  The Committee asks the Court to do just the opposite.

Additionally, the Committee has no rebuttal to the fact that the Court-approved stipulation can and should be accepted as an informal proof of claim.  *See Am. Classic Voyages Co. v. Official*

*Comm. (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 130-31 (3d Cir. 2005).  The stipulation sets forth the substantive elements of and bases for the S3 Lenders' claims and unquestionably put the Committee and the Debtors on notice of the S3 Lenders' demand and the existence and nature of such claims.

Finally, to put this issue conclusively to rest, the S3 Lenders are contemporaneously submitting "hard copy" amended proofs of claim bearing counsel's "wet" signature.  The Committee knows, and has always known, the bases for the S3 Lenders' claims, but such further submissions moot the Committee's hyper-technical and inequitable position.

## IX.    THE COMMITTEE'S PURPORTED DEFENSES OF SETOFF, RECOUPMENT, AND SECTION 502(d) FAIL ON ACCOUNT OF THE DEFECTIVE CLAIMS UPON WHICH SUCH DEFENSES ARE PREMISED.

Counts VI.E, VI.F., XIII.G., and XIII.H., asserting the defenses of setoff, recoupment, and Bankruptcy Code Section 502(d), are each premised upon the Committee's other counts in its Complaint.  In light of the significant defects in those various other counts, as discussed above and in the S3 Memo., the Committee's objections based on setoff, recoupment, and Bankruptcy Code Section 502(d) cannot stand.  The fact that the Court-approved stipulation preserved the Committee's right to raise such defenses does not establish the propriety or merit of such defenses.  Unless and until the Committee states a valid claim against the S3 Lenders and pursuant to which the Committee is entitled to recover, no basis exists for setoff, recoupment, or the conditional and temporary disallowance of the S3 Lenders' claims under Section 502(d).  As such, these counts should be dismissed.

## CONCLUSION

Based on the foregoing, the Committee's Complaint must be dismissed in its entirety.

Dated: November 3, 2023
     New York, New York

SEYFARTH SHAW LLP

By:    /s/ James S. Yu

     James S. Yu
     M. Ryan Pinkston (*Pro Hac Vice*)
     **SEYFARTH SHAW LLP**
     620 8th Avenue
     New York, NY 10018
     Telephone: (212) 218-5524
     Facsimile: (917) 344-1339
     Emails:  jyu@seyfarth.com
             rpinkston@seyfarth.com

*Attorneys for S3 RE Bergenline Funding, LLC and*
*S3 RE 1300 Manhattan Funding LLC*

Dated: November 3, 2023
     Wilmington, Delaware

MCCARTER & ENGLISH LLP

By:    /s/ Kate Roggio Buck

     **McCARTER & ENGLISH, LLP**
     Kate Roggio Buck
     Adam M. Swanson (*Pro Hac Vice*)
     Stephanie A. Pisko
     Four Gateway Center, 100 Mulberry Street
     Newark, NJ 07102
     Telephone: (973) 622-4444
     Facsimile: (973) 624-7070
     Emails:  kbuck@mccarter.com;
             spisko@mccarter.com
             aswanson@mccarter.com

*Attorneys for S3 RE 1300 Manhattan Funding LLC*