Order Filed on January 5, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: **NATIONAL REALITY INVESTMENT ADVISORS, LLC,** *et al.*, Debtors. | Case No.: 22-14539<br>Chapter: 11<br>Judge: John K. Sherwood |
| **AIRN LIQUIDATION TRUST,** Plaintiff, v. **S3 RE BERGENLINE FUNDING LLC AND S3 RE 1300 MANHATTAN FUNDING LLC,** Defendants. | Adv. Pro. No.: 23-01169<br>Hearing Date: November 14, 2023 |

### DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS

The relief set forth on the following pages, numbered two (2) through nineteen (19), is hereby **ORDERED**.

**DATED: January 5, 2024**

Honorable John K. Sherwood
United States Bankruptcy Court

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 2 of 19

Page 2
Debtor: National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.: 23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

S3 RE Bergenline Funding LLC ("S3 Bergenline") and S3 RE 1300 Manhattan Funding LLC ("S3 Manhattan") (together, the "S3 Lenders") seek dismissal of the Complaint filed by the Official Committee of Unsecured Creditors in the jointly administered chapter 11 bankruptcy cases of National Realty Investment Advisors, LLC and its debtor affiliates ("NRIA" or collectively, the "Debtors"). The fourteen-count Complaint challenges the extent and validity of two mortgages held by the S3 Lenders against the Debtors' properties. The Complaint also seeks to avoid certain pre-petition and post-petition transfers made by NRIA to the S3 Lenders based on actual and constructive fraud. As set forth below, most of the Counts of the Complaint pass the plausibility test and will survive the S3 Lenders' Motion to Dismiss.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant 28 U.S.C. § 157(b)(2)(B), (C), (H), (K), and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTS AND PROCEDURAL HISTORY

On June 7, 2022, (the "Petition Date"), Debtors filed for bankruptcy under chapter 11. On June 29, 2023, the Official Committee of Unsecured Creditors filed a Complaint against the S3 Lenders, seeking to avoid the S3 Lenders' mortgages, avoid and recover pre- and post-petition payments, and invalidate or reduce their claims. [ECF No. 1].

On September 5, 2023, the S3 Lenders filed a Motion to Dismiss the Complaint for failure to state a claim. [ECF No. 20]. The AIRN Liquidation Trust (the "Plaintiff") filed its Opposition to

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 3 of 19

Page 3
Debtor:           National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:    23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

the Motion to Dismiss. [ECF No. 29].[1] The S3 Lenders submitted a Response in support of their Motion to Dismiss [ECF No. 32]. The Court heard oral argument on November 14, 2023, and reserved decision.

The Complaint asserts fourteen claims for relief against the S3 Lenders in connection with two construction loans and mortgages entered into by the S3 Lenders and two of NRIA's debtor affiliates: Bergenline Capital 4901 LLC (the "Bergenline Debtor") and Manhattan Avenue Capital 1300 LLC (the "Manhattan Debtor"). [ECF No. 1].

On July 17, 2018, S3 Bergenline agreed to loan the Bergenline Debtor up to $39 million to finance the Bergenline Debtor's property and, as security, S3 Bergenline was granted a mortgage against 4901 Bergenline Avenue, West New York, New Jersey. [ECF No. 1, ¶¶ 3, 79]. S3 Bergenline recorded its mortgage in Hudson County, New Jersey. [ECF No. 1, ¶ 85]. On November 15, 2019, S3 Manhattan agreed to loan the Manhattan Debtor up to $44 million and, as security, S3 Manhattan was granted a mortgage against 1300 Manhattan Avenue, Union City, New Jersey. [ECF No. 1, ¶¶ 8, 96]. S3 Manhattan recorded its mortgage in Hudson County, New Jersey. [ECF No. 1, ¶ 102]. Both mortgages were signed and guaranteed by Rey E. Grabato II ("Mr. Grabato"), one of NRIA's former principals. [ECF No. 1, ¶ 1].

On December 20, 2022, the S3 Lenders filed proofs of claims in the Debtors' case. S3 Bergenline's total claim is $31,617,347.74, based on the outstanding principal balance of $29,269,017.25 on the Petition Date, plus floating interest and 24% default rate interest. [ECF No. 1, ¶ 111]. S3 Manhattan's total claim is $6,040,875.61, based on the outstanding principal balance

---

[1] On September 15, 2023, the Debtors' First Amended Joint Chapter 11 Plan terminated the Official Committee of Unsecured Creditors and established the Plaintiff as its successor. [Case No. 22-14539, ECF No. 3256].

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 4 of 19

Page 4
Debtor: National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.: 23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

of $2,143,085.39 on the Petition Date, plus minimum yield interest of $3,897,790.22 and 24% default rate interest. [ECF No. 1, ¶ 113].

Under Debtors' First Amended Joint Chapter 11 Plan (the "Plan"), the S3 Lenders' mortgage claims "will be paid in full in Cash when [they] become Allowed Class 3 Claims as determined by a Final Order." [Case No. 22-14539, ECF No. 3256, p. 21]. The S3 Lenders' liens were to "attach to their respective Collateral and proceeds from such Collateral … *subject to the Avoidance Actions, Causes of Action, and objections to Claims asserted by the Committee*" in this Adversary Proceeding. [Case No. 22-14539, ECF No. 3256, p. 22]. Further, the Plan stated that "any portion" of the S3 Lenders' mortgage claims "determined not to be a Secured Claim, … shall be classified and afforded the treatment of Class 4 Non-Investor General Unsecured Claims." [Case No. 22-14539, ECF No. 3256, p. 22]. Since the Class 4 Non-Investor General Unsecured Claims are to receive payment in full under the Plan, for practical purposes, this Adversary Proceeding is more about the S3 Lenders' claims for interest, default rate interest and minimum yield interest. It does not appear that Plaintiff is challenging the S3 Lenders' rights to recover the full principal amounts of their loans.

The Plan also addresses the impact (or lack thereof) of the substantive consolidation of the Debtors' estates on the claims by the Plaintiff against the S3 Lenders that were pending when the Plan was confirmed. Notably, the Plan states that "nothing in th[e] Plan, including without limitation, any limitation on the effect of substantive consolidation … is intended to or shall impair the rights, remedies, claims or defenses of the Committee, the Liquidation Trust, the Liquidation Trustee … or [the S3 Lenders in this Adversary Proceeding] …." [Case No. 22-14539, ECF No. 3256, p. 22]. Thus, while the Plan intended to substantively consolidate the Debtors, Plaintiff

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 5 of 19

Page 5
Debtor: National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.: 23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

contends that substantive consolidation was not meant to affect the claims within this Adversary Proceeding. The S3 Lenders dispute this contention.

## **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6)—applicable under Bankruptcy Rule 7012— "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is "context specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 663-64 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556). Courts must first "accept all of the complaint's well-pleaded facts as true," aside from mere conclusory statements and then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 679).

While Fed. R. Civ. P. 9(b) requires assertions of fraud to be plead with specificity, "[c]ourts have also noted that, in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee, a third party outsider to the fraudulent transaction, is bringing the action." *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 514-15 (Bankr. D.N.J. 1995); *see also In re Fedders N. Am., Inc.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) (quoting *In re Harry Levin, Inc.*, 175 B.R. 560, 567 (Bankr. E.D. Pa. 1994) ("[t]his is because of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party'"); *In re Norvergence, Inc.*, 405 B.R. 709, 733 (Bankr. D.N.J. 2009) (quoting *In re Oakwood*

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 6 of 19

Page 6
Debtor:           National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:    23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

*Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) (following the "Third Circuit's relaxed standard of applying Rule 9(b) that has been carved out for bankruptcy trustees who are pleading fraudulent transfer counts"). Because the Plaintiff is a liquidating trust established under the Debtors' Plan, it is appropriate to apply this relaxed standard to the S3 Lenders' motion.

## ANALYSIS

The S3 Lenders seek dismissal of the entire Complaint, which contains fourteen counts. The first seven counts relate to the S3 Bergenline loan and counts eight through fourteen relate to the S3 Manhattan loan. Plaintiff's claims can be divided into the following five categories, discussed below: (1) "Mortgage Validity Claims;" (2) "Actual Fraud Claims;" (3) "Constructive Fraud Claims;" (4) "Post-petition Payment Claims;" and (5) "Claim Objections."

### I.     Mortgage Validity Claims

Counts I, VII, VIII, and XIV of the Complaint claim that the mortgages and assignments of rents held by S3 Bergenline and S3 Manhattan are invalid and must be avoided. These claims are based on Plaintiff's allegations that NRIA and Mr. Grabato engaged in improper practices with respect to the S3 Lenders' mortgage documents. [ECF No. 1, ¶¶ 126-146]. Essentially, Plaintiff contends that because the S3 Lenders' loan documents were not properly executed and notarized, the mortgages and assignments of rents should be deemed invalid, and the S3 Lenders' claims should be treated as though they are unsecured.

Even deficiencies in minor notarization formalities will invalidate a perfected mortgage. *In re Buchholz*, 224 B.R. 13 (Bankr. D.N.J. 1998). The Court in *In re Buchholz* found a creditor's mortgage "unsecured as it was never properly acknowledged" by the notary and, therefore, "never perfected under New Jersey state law." *Id*. at 20. There, the debtor signed the mortgage at the bank,

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document      Page 7 of 19

Page 7
Debtor:          National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:   23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

and the bank officer immediately brought the signed document to the staff notary, who notarized it outside of the debtor's presence. *In re Buchholz*, 224 B.R. at 16-17. The Court held "[w]hile such recording requirements may seem overly formalistic, [they] … should be strictly construed." *Id.* at 21-22; *see In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *37 (Bankr. D.N.J. Nov. 8, 2013) (holding same, New Jersey recording statutes require acknowledgment of a mortgage in the presence of a notary as "a prerequisite to the recording of a mortgage," and "a mortgage which has been inadvertently recorded with a defective acknowledgment does not serve as notice to a subsequent purchaser").

In its Complaint, Plaintiff pleads particularized allegations, not mere conclusions, that Mr. Grabato's signature page was notarized separate and apart from the recorded mortgage for both the Bergenline and Manhattan mortgages. [ECF No. 1, ¶¶ 129-146]. Specifically, Plaintiff states that the dates on the notarized acknowledgment pages differ from those on the final recorded mortgage instrument. [ECF No. 1, ¶¶ 129, 143]. In addition, Plaintiff alleges that email correspondence amongst the S3 Lenders and NRIA reveals that multiple versions of the mortgage instrument were changed and finalized after notarization, with the final version simply being attached to the already-signed acknowledgment page. [ECF No. 1, ¶¶ 132, 139-41]. Though there is a "strong presumption" that a notarized signature is what it purports to be, the presumption can be overcome, and the Complaint alleges, at minimum, that Mr. Grabato did not have the final mortgage before him when his signature was notarized. Like in *In re Buchholz*, the error while notarizing an instrument not acknowledged in the notary's presence, albeit minor and formalistic, can render a mortgage an unperfect, unsecured lien under the New Jersey recording statutes.

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 8 of 19

Page 8
Debtor:         National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:  23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

But the situation here can be distinguished from *In re Buchholz* in one respect that may or may not be important. Plaintiff does not necessarily contend that Mr. Grabato gave his signature outside the presence of the notary. The contention appears to be that a different document was substituted for the one originally notarized, or that Mr. Grabato executed signature pages by themselves which were later attached to the mortgages that were recorded. The Complaint suggests that the Debtors, the notary, and possibly the S3 Lenders were "cutting corners" in the mortgage acknowledgement process. The basic inquiry is whether Mr. Grabato appeared before the notary and acknowledged that he was authorized to execute the mortgage documents and that they were executed as the mortgagors' own acts. N.J. Stat. Ann. § 46:14-2.1 (West 2021). It is unclear here whether the mortgage documents were acknowledged in a "slip-shod manner" as the Court found in *In re Buchholz* or whether the parties complied with the acknowledgement formalities in all material respects. Plaintiff should have the opportunity through discovery to develop more facts relating to the acknowledgement pages attached to the S3 Lenders' mortgage documents. Thus, the Mortgage Validity Claims will not be dismissed.

## II. Actual Fraud Claims

Counts II and IX of the Complaint are claims to recover pre-petition transfers from NRIA to the S3 Lenders with intent to hinder, delay or defraud creditors under state and federal law. Plaintiff alleges that funds from innocent investors were transferred to the S3 Lenders in the context of a Ponzi scheme. [ECF No. 1, ¶ 175].

Section 548(a)(1)(A) of the Bankruptcy Code states that a trustee may avoid transfers made within two years of the petition date, if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud" any entity to which the debtor became indebted

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 9 of 19

Page 9
Debtor:           National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:    23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

after the date of such transfer. Here, the "Ponzi scheme presumption" establishes NRIA's actual intent to defraud, because "transfers made in the course a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *In re Carton*, 2023 WL 8057870, at *7 (Bankr. D.N.J. Nov. 20, 2023) (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011); *see In re C.F. Foods, L.P.*, 280 B.R. 103, 111 (Bankr. E.D. Pa. 2002) (finding actual fraudulent transfer made by Ponzi scheme debtor to charity, because transfer need not be made to defraud the transferee-charity, as long as there is actual intent to defraud "*any* creditor of the debtor"); *see also In re DBSI, Inc.*, 477 B.R. 504, 512 (Bankr. D. Del. 2012) (holding actual fraud exists in Ponzi scheme because transfers furthered the scheme by "keep[ing] the flow of investor money coming into DBSI").

Plaintiff's allegations establish a claim for relief based on actual fraudulent transfers by NRIA. The Complaint states that the funds obtained from innocent investors were transferred to the S3 Lenders in furtherance of NRIA's Ponzi scheme. [ECF No. 1, ¶¶ 167-177]. In other words, it alleges that NRIA, in the midst of a Ponzi scheme, funded the pre-petition transfers to the S3 Lenders while fraudulently obtaining millions of dollars from investors. [ECF No. 1, ¶¶ 170, 172]. The Debtors' intent to defraud is presumed from allegations of NRIA's Ponzi scheme, such that any pre-petition transfers made by NRIA to the S3 Lenders furthered the scheme's existence. To the extent the S3 Lenders contend that they received the pre-petition transfers in good faith, this may be raised as a defense to the Complaint. The S3 Lenders' defenses will not be litigated at the motion to dismiss phase. *See In re Bernard L. Madoff Inv. Sec., LLC*, 458 B.R. at 105. Because the Complaint sufficiently alleges the existence of actual fraudulent transfers by NRIA, the Actual Fraud Claims against the S3 Lenders will not be dismissed.

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 10 of 19

Page 10
Debtor:         National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:  23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

### III. <u>Constructive Fraud Claims</u>

Counts III and X of the Complaint are claims to recover pre-petition transfers to the S3 Lenders as constructively fraudulent under state and federal law. Because NRIA, or any Debtor other than the Bergenline Debtor and the Manhattan Debtor, was not indebted to the S3 Lenders, use of NRIA's funds to pay the S3 Lenders at a time when NRIA was insolvent might be a constructive fraudulent conveyance. The S3 Lenders argue that these claims should be dismissed because the Debtors' estates were substantively consolidated upon confirmation of the Debtors' Plan and, therefore, constructive fraud cannot occur because there is no distinction between the separate Debtors. [ECF No. 20-1, pp. 17-18].

Section 548(a)(1)(B) of the Bankruptcy Code allows the avoidance of a transfer of a debtor's property if the debtor was insolvent at the time and "received less than a reasonably equivalent value in exchange for such transfer." The Complaint asserts that NRIA, and not the Manhattan Debtor or Bergenline Debtor, transferred funds to the S3 Lenders. Further, at a time when NRIA was insolvent, it transferred these funds without having an obligation to S3 Lenders or receiving equivalent value in return. [ECF No. 1, ¶¶ 181-187]. In response, the S3 Lenders argue that the Debtors' substantive consolidation under the Plan renders any constructive fraudulent transfer claim "fatal," because the distinction between the separate Debtors was eliminated. [ECF No. 20-1, pp. 2, 16]. Plaintiff says that the language from the Plan below provides that substantive consolidation of the Debtors will have no impact one way or another on the claims against the S3 Lenders in this Adversary Proceeding that were pending when the Plan was confirmed.

> The Liens of the Holders of Allowed Class 3 Claims will continue to attach to their respective Collateral and proceeds from such Collateral after the Effective Date, subject to the Avoidance Actions, Causes of Action, and objections to Claims asserted by the Committee in Adversary Proceeding No. 23-01169 (the "S3 Adversary") and that have been reserved under the Plan

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 11 of 19

| | |
|---|---|
| Page 11 | |
| Debtor: | National Realty Investment Advisors, LLC, et al. |
| Adv. Pro. No.: | 23-01169 |
| Caption of Order: | **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS** |

and in the Plan Supplement, and to the extent such Class 3 Claims are ultimately Allowed. Class 3 is Impaired under the Plan.

<u>Class 3A</u>: S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC agree that the Third-Party Mortgage Claims asserted by S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC (collectively, the "S3 Third-Party Mortgage Claims") will be paid in full in Cash when such S3 Third-Party Mortgage Claims become Allowed Class 3 Claims as determined by a Final Order entered by the Bankruptcy Court and that the injunction provisions of Article VIII.C shall apply to S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC and to any and all successors, assigns, loan participants, and Affiliates until such Final Order is entered, provided that ***nothing herein shall be deemed to prejudice, waive, or moot the Avoidance Actions, Causes of Action, claims, and objections to the S3 Third-Party Mortgage Claims asserted against S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC in the S3 Adversary***. For the avoidance of doubt: … (ii) to the extent any portion of the S3 Third-Party Mortgage Claims is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of Class 4 Non-Investor General Unsecured Claims to the extent so Allowed; and (iii) ***nothing in this Plan***, including without limitation, any limitation on the effect of substantive consolidation as set forth in Article IV, Section H *infra*, ***is intended to or shall impair the rights, remedies, claims or defenses of the Committee, the Liquidation Trust, the Liquidation Trustee, S3 RE Bergenline Funding LLC and/or S3 RE 1300 Manhattan Funding LLC in the S3 Adversary*** or as preserved under this Plan and the Plan Supplement.

Plan at 21-22. *See* Pl.'s Opp'n, ¶ 54, ECF No. 29 (emphasis added by Plaintiff).

The S3 Lenders also rely on this language to suggest that any *limitations* in the Plan of the effect of substantive consolidation do not apply to this Adversary Proceeding. Thus, the parties intended that substantive consolidation *would* be a factor in this Adversary Proceeding after the Plan was confirmed. Further, the S3 Lenders state that the elimination of the Plaintiff's Constructive Fraud Claims was specifically discussed with the Committee during Plan negotiations and the language above was designed to memorialize that understanding. The S3 Lenders contend that they have documents confirming this interpretation and will provide them upon request. [ECF No. 32, p. 10]. Although the Plan reserved the rights, remedies, avoidance actions, and claim objections of the Plaintiff, it is unclear whether substantive consolidation was intended to impact this Adversary Proceeding. The Plan language on the topic is somewhat

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 12 of 19

Page 12
Debtor:         National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:  23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

ambiguous, but if there is evidence, as suggested by the S3 Lenders, that the language was designed to preserve the impact of substantive consolidation on this Adversary Proceeding, the Court would be inclined to grant the Motion to Dismiss as to the Constructive Fraud Claims. For now, the Motion is denied on this basis.

While the parties have devoted significant energy addressing substantive consolidation, another argument by the S3 Lenders in response to the Post-Petition Payment Claims discussed below may provide an easy path to dismissal of the Constructive Fraud Claims. The S3 Lenders assert that the Plan provides for their payment in full, even if their claims are demoted to Class 4, thereby making claims for recovery of interest inconsequential. [ECF No. 20-1, p. 16]. While "an allowed unsecured claim cannot include post-petition interest," Section 502(b) does not prevent pre-petition interest on an unsecured claim. *In re Energy Future Holdings Corp.*, 540 B.R. 109, 113 (Bankr. D. Del. 2015) (limiting unsecured allowed claim to the principal and pre-petition interest and fees, excluding post-petition interest); *see also United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372-73 (1988) (affirming that the "undersecured creditor … falls within the general rule disallowing postpetition interest" under 11 U.S.C. § 502(b)(2)). Even if substantive consolidation has no effect on the Constructive Fraud Claims, the S3 Lenders are entitled to pre-petition interest on their unsecured claims. Debtors' Plan provides for payment in full of the S3 Lenders' allowed claims, whether they are secured in Class 3 or unsecured in Class 4. Therefore, avoiding the S3 Lenders' pre-petition interest payments by NRIA would likely give the S3 Lenders the right to increase their Class 4 unsecured claims by such amount. As a

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 13 of 19

Page 13
Debtor:         National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:  23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

result, should the Plaintiff prevail on the Constructive Fraud Claims, anything gained in these claims would have to be returned to the S3 Lenders and would be a wasteful exercise.[2]

At this stage, the Constructive Fraud Claims are on "thin ice" and the Plaintiff should consider whether these claims are material. But, given the ambiguity over the Plan's language with respect to substantive consolidation and whether these claims were intended to be preserved, the Constructive Fraud Claims will not be dismissed.

### IV.    Post-Petition Payment Claims

Counts IV, V, XI and XII of the Complaint are claims to recover post-petition payments to the S3 Lenders. Plaintiff contends that these payments were made on the premise that the S3 Lenders' mortgages were valid and fully secured. To the extent that the Mortgage Validity Claims (described above in Category I) are successful, this premise is incorrect, and Plaintiff seeks to avoid and return to the estate post-petition interest and adequate protection payments made by the Debtors to the S3 Lenders. Plaintiff also seeks to recover these post-petition payments based on unjust enrichment occurring from transfers made by NRIA to benefit the S3 Lenders in connection with the two allegedly invalid and unsecured mortgages.

Counts IV and XI seek the recovery of post-petition transfers from Debtors to S3 Bergenline and S3 Manhattan. As of June 6, 2023, S3 Bergenline received $3,451,511.74, and S3 Manhattan received $252,871.43 as post-petition adequate protection payments. [ECF No. 1, ¶¶ 196, 273]. While the S3 Lenders urge that the post-petition interest and adequate protection payments made by Debtors were allowed in the ordinary course of business, this is not an accurate portrayal

---

[2] The same argument might be true with respect to the Actual Fraud Claims; even if pre-petition interest is clawed back by the Plaintiff, the S3 Lenders' unsecured claim is treated as unimpaired in Class 4.

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 14 of 19

Page 14
Debtor:          National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:   23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

considering those payments were mandated *only* pursuant to the Consent Order and Stipulation (A) Providing Adequate Protection, and (B) Granting Related Relief (the "Consent Order") between Debtors and the S3 Lenders. [Case No. 22-14539, ECF No. 1573]. Debtors were required to pay certain adequate protection and interest to the S3 Lenders, but the Consent Order "is without prejudice to only the right of the [Committee] *to examine and challenge the extent, validity and/or priority of the Lenders' interest, if any, in the Properties, as well as to raise any claim against the Lenders in the nature of a setoff, counterclaim, or defense*." [Case No. 22-14539, ECF No. 1573, ¶ 4]. Avoidance actions and mortgage validity objections are the exact claims that the Debtors and Committee contemplated and preserved under the Consent Order. The Court agrees that if the Mortgage Validity Claims render the S3 Lenders' mortgages avoidable and unsecured, these payments should be returned to the estate (or recharacterized as payments against principal).

Alternatively, if S3 Manhattan's mortgage is not avoided, the Complaint alleges that, based upon information provided to the Plaintiff and the market value of the Manhattan property, S3 Manhattan's claim may not be fully secured and thus is not entitled to post-petition interest. [ECF No. 1, ¶ 296]. The S3 Lenders argue that the Plan contemplates that S3 Lenders' claims would be paid in full, "so avoidance and recovery of interest payments that will only then be paid in full at a later date serves no purpose." [ECF No. 20-1, p. 16]. While this may be true as to pre-petition interest payments, as stated above, the Plan does not provide for payment of post-petition interest to the S3 Lenders for claims found to be unsecured or undersecured. [Case No. 22-14539, ECF No. 3256, pp. 21-22]. The Court must accept as true the allegation that S3 Manhattan's claim is undersecured, and because the Plan entitles the S3 Lenders to payment in full of only allowed claims—and post-petition interest payments on unsecured claims would not constitute an

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 15 of 19

Page 15
Debtor: National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.: 23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

"allowed" claim—such transfers might be avoided and returned (or recharacterized as payments against principal). Moreover, Plaintiff sufficiently alleges that the intent of the Consent Order between Debtors and the S3 Lenders was to preserve the right to object to the mortgages and the post-petition payments.

Counts V and XII allege unjust enrichment against S3 Bergenline and S3 Manhattan, respectively. An unjust enrichment claim under New Jersey law must establish that the defendant "received a benefit and that retention of that benefit without payment would be unjust." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. 2013) (quoting *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 677 F. Supp. 2d 192, 196 (D.N.J. 2012)). The Complaint maintains that the S3 Lenders benefitted on account of post-petition transfers at the Debtors' expense. Specifically, accepting the assertion that the S3 Lenders' mortgages are unsecured liens, unjust enrichment occurred when NRIA made post-petition transfers to the S3 Lenders with property of the estate and harmed the general unsecured creditors and defrauded investors. [ECF No. 1, ¶¶ 203-207, 280-284]. These claims will survive dismissal for the same reasons discussed above with respect to Counts IV and XI. The Motion to Dismiss is denied as to the Post-Petition Payment Claims.

### V.    Claim Objections

Counts VI and XIII of the Complaint object to the S3 Bergenline and S3 Manhattan claims on various grounds including lack of signature, excessive interest rates, and defenses to the claims such as setoff and recoupment.

The objections to the S3 Bergenline and S3 Manhattan proofs of claims for being unsigned will be dismissed. The Complaint asserts that an unsigned proof of claim is facially invalid. [ECF No. 1, ¶ 290]. The Court, however, agrees with the S3 Lenders' position that technological

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 16 of 19

Page 16
Debtor: National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.: 23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

difficulties with the claim website, which prevented S3 Lenders' counsel from entering his signature, should not, by itself, be grounds for objection to the S3 Lenders' claims. This is especially true here, where there is no prejudice to the Plaintiff or the Debtors' estates. [ECF No. 20-1, p. 28].

Plaintiff also objects to the secured status of the S3 Lenders' claims based on the invalidity and avoidability of their mortgages. As described above, the Court has determined that the Mortgage Validity Claims survive the Motion to Dismiss and might transform the S3 Lenders' claims to unsecured status. Therefore, these claims will not be dismissed. Similarly, objections based on the inclusion of post-petition interest in the S3 Lenders' claims will not be dismissed because the Mortgage Validity Claims are still in play and, in the case of S3 Manhattan, Plaintiff has alleged that S3 Manhattan may be undersecured. For the same reasons, Plaintiff's objections based on setoff and recoupment (and 11 U.S.C. § 502(d)) will not be dismissed. Essentially, these objections say that to the extent Plaintiff succeeds, in whole or part, on its claims against the S3 Lenders, Plaintiff's recoveries should be applied against the S3 Lenders' claims. Since Plaintiff's claims have survived the Motion to Dismiss, these objections should be preserved.

The Court agrees that Plaintiff's objection based on the allegation that S3 Manhattan's claim is in violation of New York's criminal usury statute should be dismissed. Plaintiff argues that S3 Manhattan's interest payment is an effective rate of 94.6% per annum, in violation of the usury statute which sets a maximum interest rate at 25% for loans less than $2.5 million dollars. [ECF No. 1, ¶¶ 309-316]. However, "[t]he loan amount is calculated based upon the amount 'the lender or lenders *have agreed to advance or make pursuant to such agreement* on the terms and conditions provided therein.'" *Star Funding, Inc. v. Vault Minerals, LLC*, 2018 WL 1581685, at *3 (S.D.N.Y.

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 17 of 19

Page 17
Debtor:         National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:  23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

Mar. 28, 2018). Even with Plaintiff's allegation that S3 Manhattan loaned less than $2.5 million, this objection is deficient because at the loan's inception, S3 Manhattan contractually agreed to loan the Manhattan Debtor up to $44 million, exempting the loan from the criminal usury statute. Therefore, Count XIII(E) will be dismissed.

Plaintiff also objects to the default interest rate of 24% asserted on the S3 Lenders' claims. Plaintiff contends that the default interest rate of 24% is more than double the minimum non-default interest rate of 9.25%, which constitutes an unenforceable penalty under New York and New Jersey law.[3] Default interest rates are presumptively reasonable, however, "an unreasonable increase in the contract interest rate is unenforceable as a penalty." *MetLife Cap. Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484, 501 (1999) (finding 3% default rate increase reasonable because Plaintiff presented evidence that it was an industry custom and a "reasonable estimate of the potential costs" of a defaulted loan and replacing lost funds). Additionally, the increased size of a default rate alone may "suggest[] a punitive intent." *Id*. at 501-03 (citing *Feller v. Architects Display Bldgs., Inc.*, 54 N.J. Super. 204, 214 (App. Div. 1959) (15.87% increase held unenforceable)); *see also JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d 604, 609 (N.Y. 2005) (quoting *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 361 N.E.2d 1015, 1018 (N.Y. 1997) ("[i]f, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced")). At this stage, the Court cannot

---

[3] While both properties are located in New Jersey, the Complaint and the Motion to Dismiss address both New York and New Jersey law. The S3 Bergenline Loan Agreement, Promissory Note, and Mortgage are all governed under New Jersey law. [Compl. Ex. E, ¶ 20, ECF No. 1-5; Compl. Ex. F, ¶ 6, ECF No. 1-6; Compl. Ex. I, ¶ 33(s), ECF No. 1-9]. S3 Manhattan, on the other hand, differs in that its Loan Agreement, Promissory Note, and Mortgage are all governed by New York law. [Compl. Ex. K-3, ¶ 11.6, ECF No. 1-13; Compl. Ex. L, Art. IX, ECF No. 1-14; Compl. Ex. O, ¶ 30, ECF No. 1-17]. With regard to Plaintiff's default interest argument, the analysis under New Jersey and New York law is the same.

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 18 of 19

Page 18
Debtor:           National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.:    23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

disregard Plaintiff's allegation that the 24% default rate of interest is an unenforceable penalty, as opposed to a reasonable prediction of losses. Thus, this objection will not be dismissed.

Finally, Plaintiff objects to S3 Manhattan's "minimum interest shortfall" in the amount of $3,897,790.22 pursuant to the Manhattan property Loan Agreement. [ECF No. 1, ¶¶ 301-308]. S3 Manhattan's proof of claim for the principal balance on its loan was $2,143,085.39 as of the Petition Date, and therefore, the minimum interest shortfall is nearly twice that amount at a rate of approximately 94.6%. [ECF No. 1, ¶¶ 113, 307]. If a claim is the "economic equivalent of unmatured interest," regardless of the form whether it be a make-whole provision or liquidated damages clause, "it is disallowed by § 502(b)(2)." *In re Ultra Petroleum Corp.*, 51 F.4th 138, 147-48 (5th Cir. 2022); *see also In re Hertz Corp.*, 637 B.R. 781, 791 (Bankr. D. Del. 2021) (finding the "economic equivalent of unmatured interest is not a legal question, but is instead a factual one"); *see D.A. Nolt, Inc. v. Philadelphia Mun. Auth.*, 463 F. Supp. 3d 539, 545 (E.D. Pa. 2020) (finding liquidated damages provision unenforceable because it was "not based on a reasonable forecast of estimated actual damages"). Plaintiff alleges that the minimum yield interest, equivalent to an unenforceable "make whole payment" of unmatured interest, is a guarantee that S3 Manhattan, after deciding not to extend its entire loan principal, would nonetheless recover all expected interest. [ECF No. 29, ¶ 93]. The Court agrees that dismissal of this objection would be premature at this stage.

Case 23-01169-JKS    Doc 36    Filed 01/05/24    Entered 01/05/24 14:45:23    Desc Main
Document    Page 19 of 19

Page 19
Debtor: National Realty Investment Advisors, LLC, et al.
Adv. Pro. No.: 23-01169
Caption of Order: **DECISION AND ORDER RE: S3 LENDERS' MOTION TO DISMISS**

**THEREFORE, IT IS ORDERED:**

1. For the reasons set forth above, the S3 Lenders' Motion to Dismiss is granted in part, with respect to the Claim Objections to the extent they are based on the S3 Lenders' unsigned proofs of claims and violation of New York's criminal usury statute.

2. The Motion to Dismiss is denied as to all other Counts of the Complaint.